## Cassel, Receiver, v. Bigler et al.

*John C. Arnold*, for plaintiff.

*George R. Bigler, Boulton & Boulton*, and *W. E. Brown*, for defendants.

SMITH, P. J., October 4, 1934.—This case arises on a bill in equity filed by the receiver of Clearfield National Bank to compel Elizabeth G. Bigler, widow of A. Wright Bigler, and the administrators of A. Wright Bigler to interplead for the purpose of determining the ownership and right to receive certain collateral held by the bank, the loan thereon having been paid out of the proceeds of certain life insurance paid by the insurance company under the circumstances hereinafter set forth. A consent decree having been made by the court raising the issue between the interested parties, a bill of complaint was filed by the administrators of the estate and an answer by the widow, and upon these pleadings and the legal question raised thereby the matter comes before the court. . . .

Briefly, the facts may be stated as follows: A. Wright Bigler had insurance policies amounting to $41,099.74, all of which were payable to his wife as beneficiary. All this insurance was assigned to and held by Clearfield National Bank as collateral security for the payment of loans upon which he was liable as maker or endorser, the amount of the loans being at the time of payment $33,-731.63. While the clauses pertaining to assignment and change of beneficiary vary somewhat in form, there was no difference in substance or effect. There was other collateral, also held by the bank as security for payment of the same indebtedness, consisting of stocks, bonds, and liens on real estate. The widow's right to receive $7,368.11, which was the amount in excess of the loans, was recognized, and that amount was paid to her. The contest is as to the ownership of the other collateral, the widow and beneficiary claiming it for herself, and it also being claimed by the administrators as part of the decedent's estate.

The right to claim the collateral depends upon the question of the ownership of the funds which were used to pay the bank loans.

The question is one which has arisen in various reported cases and upon which the decisions are conflicting. There is considerable authority for the view that, as the insured did not exercise his right to change the beneficiary, and as the rights of the beneficiary became vested upon his death, she becomes entitled to the proceeds of the policies except to the extent she is subordinated to the pledgee's rights therein, and that therefore the insurance money used to pay the loan and which would otherwise go to her is in fact her money, and that she should be subrogated, therefore, to the insured's rights in the collateral after payment of the loan. We have been particularly referred to a recent case in the Ohio Supreme Court, which so holds: Katz v. The Ohio National Bank, Executor, 127 Ohio 531, decided February 21, 1934, the opinion in which contains extensive citations from other jurisdictions.

While much could be said upon this question, both by way of citation of authorities and by way of reasoning on behalf of either view, it appears to us that this question has already been squarely met and ruled by authority in this State in the case of Fidelity Trust Co., Administrator, v. Union National Bank of Pittsburgh et al., 313 Pa. 467. In that case, Harrison Nesbit had created a life insurance trust, the trustees of which were the beneficiaries of certain insurance policies. These particular policies were found to have been so deposited and the beneficiaries so designated at a time when the insured was solvent, and the question of a conveyance in fraud of creditors which was involved in some of the other items in the same case does not apply to the policies in question (p. 471). Subsequently, after becoming insolvent, he made an agreement with an Ohio bank which required the trustees to purchase certain notes, upon which he was indebted to it, after his death, this Ohio bank agreement being found by the court to be in effect, though not in form, an assignment of the proceeds of the policies. The Ohio bank held other collateral securities for the payment of its indebtedness of $200,000 and sold these securities and realized thereon sufficient to reduce the indebtedness to the bank to $57,494.20. The action was brought by the administrators of Nesbit against the trustees of the insurance trust, naming also as defendants Nesbit's wife and children, who were beneficiaries of the life insurance trust, and the Ohio bank. The Ohio bank, in view of its having realized on a large part of its security, asked for discontinuance of the action as to it and was accordingly dismissed as a party to the action. The lower court awarded to the administrators the amount of $57,494.20 out of these policies. The plaintiff appealed, contending that the entire $200,000 should have been awarded. The defendants also appealed, contending that the plaintiff was not entitled to any part of this amount. The Supreme Court sustained the plaintiff's contention and awarded the entire $200,000 to the plaintiff.

In passing upon the defendant's contentions in the Nesbit case, the court disposed of three principal contentions: (a) That the Act of April 17, 1843, P. L. 273, relating to assignments, was repealed by the Insolvency Act of June 4, 1901, P. L. 404; (b) that the Ohio bank agreement had not been accepted by the bank; and (c) that insurance payable to a wife and children is exempt by statute from the claims of creditors. The Supreme Court sustained none of these contentions. While it found that the Act of 1843 was repealed by the Act of 1901, it found that the provisions of the Act of 1901 governed the assignment in question and had the same effect, also finding that the assignment was contrary to the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045—in other words, that the assignment itself was valid, not depending upon statute but being an assertion of a right incidental to ownership, but that the assignment, because of the operation of the acts mentioned and because of the insolvency of Nesbit at the time, operated not for the benefit of the Ohio bank but for the benefit of all the creditors of Nesbit. Contention (b) was disposed of on evidence of the bank's acting under the agreement. Contention (c), which would also apply in the instant case, was disposed of in the following language: "The right of the wife and children to participate in the insurance was an expectancy measured by the policies and the insurance trust agreements. One of the conditions of the donor's gift was that, by the exercise of power expressly reserved, he might destroy altogether the expectancy of his wife and children. By the Ohio bank agreement, he diminished the contingent beneficial interest theretofore conferred on his family, and subordinated that interest in the insurance proceeds to the extent of the loan and interest." The court also says: "While the statute exempts insurance payable to the family, it does not exempt pro-

ceeds payable to a creditor or creditors and the family; the creditor's interest is not exempt."

It has been contended in the instant case that the decision in the Nesbit case depended largely on the question of insolvency. Examination of the case, however, with reference to this portion of the insurance in question, does not sustain that view. In finding that the plaintiff was entitled to receive the entire amount of the loan of $200,000 from the proceeds of the policies, the reasoning of the Supreme Court is based not upon insolvency but upon the nature of the interests involved. The court says in part: "The Ohio bank agreement was a conveyance, to the bank, of an interest in the proceeds expected to come into the hands of the trustees; the value of the right was the face of the note with interest. Though it turned out that the bank did not realize on the conveyance, the failure to obtain the value which the donor had carved out of what was once an expectancy provided for his family alone, did not revest that interest in the family. It remained where it was, an asset of the donor, which on his death passed to his personal representatives in such amount as the bank might have claimed. The plaintiff is therefore entitled to that interest in the proceeds."

In the Nesbit case, as here, the assignment between Nesbit and the bank was merely collateral security, even though absolute in form. The language of the court indicates that the rights of the parties do not depend upon whether the bank actually realized on the insurance policies. As we construe this decision, it evidences the view of the Supreme Court that when once the insured takes away from the expectancy previously granted to his beneficiary some part or all of it and conveys it, even though merely by way of lien rather than absolutely, to another person, his action must be held to bar the expectancy to that extent; or, to state it otherwise, when he resorts to the insurance policies and makes them assets for the payment of his debts, he has in effect made them an asset of his estate for all purposes to the extent so charged, the measure of that extent being the amount of the loan. This view would not be affected by the fact that, in addition to the insurance so resorted to, he had other assets also pledged for the same loan; the entire collateral was his and had been by him subjected to the prior rights of the pledgee, and there could be, as between the several parts of his own collateral, no rights of subrogation as to part thereof.

In our opinion, therefore, when A. Wright Bigler added his life insurance to the collateral securities which he already had pledged with the bank, he made it a part of his estate to the extent of the loan, and the act of the pledgee in obtaining payment of the loan out of the insurance proceeds would not by subrogation divest the ownership of the decedent of the collateral securities still held, but they would remain as before the property of A. Wright Bigler, now vested by reason of his death in his administrators.

### Decree

Now, October 4, 1934, in accordance with opinion filed herewith, it is ordered, adjudged, and decreed:

(1) That Howard N. Cassel, receiver of Clearfield National Bank, Clearfield, Pa., be and he is hereby required to assign and deliver to Elizabeth G. Bigler and the Clearfield Trust Company, administrators of A. Wright Bigler, all the obligations and accompanying collateral referred to in exhibit "A" of the bill of complaint. . . .

(2) That Elizabeth G. Bigler, the respondent in this proceeding, be and she is hereby forever barred from asserting any claim for delivery, assignment, or accounting against and from either Howard N. Cassel, receiver of Clearfield National Bank of Clearfield, Pa., or Elizabeth G. Bigler and Clearfield Trust

128

Company, administrators of A. Wright Bigler, deceased, for any of the obligations, securities, or other items referred to in paragraph (1) hereof.

(3) This decree shall be entered nisi in accordance with Equity Rule 68, shall be subject to exceptions in accordance with Rule 69, to be passed upon in accordance with the provisions of the Equity Rules, or, if no exceptions shall be filed within 10 days after its entry, shall become final.

From John M. Urey, Clearfield, Pa.